IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Gregory Baker, | ) | |
| | ) | Case No. 13 C 50193 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Wexford Health Sources, Inc., | ) | |
| Nedra Chandler, Bessie | ) | |
| Dominguez, Arthur Funk, and | ) | |
| Darla Habben | ) | |
| | ) | |
| | ) | Judge Philip G. Reinhard |
| Defendants. | ) | |

## ORDER

For the reasons stated below, defendants Nedra Chandler and Darla Habben's motion to dismiss [30] is denied and defendant Wexford Health Sources, Inc.'s motion to dismiss [20] is denied.

## STATEMENT - OPINION

Plaintiff, Gregory Baker, an inmate at Dixon Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff alleges violations under the Eighth Amendment for deliberate indifference to medical needs. He specifically names Wexford Health Sources, Inc., (a Florida corporation engaged in the business of providing health care services to inmates at certain correctional facilities in Illinois), Nedra Chandler (the Warden of Dixon Correctional Center), Darla Habben (a Food Service Supervisor at Dixon Correctional Center), Dr. Bessie Dominguez (a physician employed by Wexford Health Services, Inc.), and Dr. Arthur Funk (the Medical Director at Wexford Health Source, Inc.), as defendants.

Dr. Funk and Dr. Dominguez have answered plaintiff's complaint. *See* [32]; [33]. The remaining defendants have filed two separate motions to dismiss. *See* [20]; [30].

Defendant Wexford Health Sources, Inc. ("Wexford") argues it should be dismissed from the case because plaintiff has failed to allege that Wexford has an unconstitutional policy that caused his alleged constitutional deprivation. *See* [20]. Defendants Chandler and Habben contend they should be dismissed from the suit because the complaint fails to allege they were deliberately indifferent to plaintiff's medical needs. *See* [30]. Both motions are brought pursuant to Federal Rule of Civil Procedure 12(b)(6).

1

"To survive a motion to dismiss under Rule 12 (b)(6), the complaint must state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Yeftich v. Navistar*, 722 F.3d 911, 915 (7th Cir. 2013) (internal quotation marks and citations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citations omitted). In cases such as these, the inference of liability is only "speculative." *Id.*

The amended complaint sets forth three counts under 42 U.S.C. § 1983 for deliberate indifference to medical needs. Count I asserts a claim against defendants Dr. Dominguez and Dr. Funk. Count II asserts a claim against defendant Wexford and count III sets forth a claim against defendants Chandler and Habben. All three claims relate to plaintiff's delayed medical treatment for an injury he suffered in July, 2011 while working in the Dietary Building at the Dixon Correctional Center ("Dixon").

Specifically, plaintiff alleges that on July 11, 2011 he was working his assigned job detail in the kitchen at Dixon. *See* [13] ¶ 12. He claims that he went outside to the loading dock and defendant Darla Habben ordered him and another inmate to unload a hot box (a large metal box used to store pots and pans) out of a food service van. *See id.* ¶ 13. Plaintiff claims he told Habben he did not have experience unloading hot boxes, but Habben ordered him to assist anyway. *See id.* ¶ 14.

Pursuant to Habben's instructions, plaintiff began to unload the hot box with the other inmate. While the two managed to get the box out of the van and onto the dock, they eventually lost control of the box causing it to fall on plaintiff's right forearm. *Id.* ¶ 15. Plaintiff states that another inmate observed the incident and rushed over to help lift the box off of his arm. Shortly after this, plaintiff located defendant Habben to notify her of the accident. Apparently, at this time, plaintiff did not believe his arm was seriously injured and told Habben he thought it was a sprain. *Id.* ¶ 17.

The next day plaintiff's arm was bruised and swollen and he was in more pain than he had been the previous day. *See id.* ¶ 18. He claims that he showed Habben his arm and requested immediate medical attention. Plaintiff states Habben told him that she needed to speak with a supervisor to see if she could accommodate his request. Allegedly, later that day, Habben informed plaintiff that her supervisor had denied his request for immediate medical care, and instead instructed plaintiff to sign up for sick call the following day. *Id.* ¶ 19.

Plaintiff followed these instructions and was seen by a nurse at sick call the next day. Allegedly, the nurse examined plaintiff's arm and told him that she would place him on a list to be seen by a doctor. *Id.* ¶ 21.

Plaintiff alleges that he waited weeks to see a doctor and during this time his hand got progressively worse. He claims he complained repeatedly to various nurses at sick call but was only given ibuprofen and an ace bandage. *See* id. ¶ 22.

Plaintiff states he finally saw a doctor (defendant Dr. Dominguez) on August 2, 2011. *Id.* ¶ 24. At this time, Dr. Dominguez examined plaintiff's arm and informed him "something was out of place." *See id.* Ten days later, plaintiff visited Dr. Dominguez again and was told Dr. Dominguez would be recommending plaintiff to an outside orthopedic doctor. A few days later,

however, Dr. Dominguez informed plaintiff that his request for plaintiff to see an orthopedic doctor had been denied.

On August 17, 2011, plaintiff filed an emergency grievance with the Illinois Department of Corrections. In his grievance, he complained about his lack of medical care. A week later, plaintiff saw Dr. Dominguez again. *See id.* ¶¶ 27, 28.

On September 11, 2011, plaintiff received a response from his emergency grievance. The letter indicated that Warden Chandler had reviewed plaintiff's grievance and determined that his condition was not an emergency. *Id.* ¶ 29. Around this time, plaintiff was again seen by Dr. Dominguez. On this visit, Dr. Dominguez referred plaintiff to Dr. Funk for a second opinion regarding the orthopedic recommendation. *Id.* ¶ 30.

On September 12, 2011, plaintiff filed another emergency grievance about his lack of medical treatment. *Id.* ¶ 31. A few days later, plaintiff saw Dr. Funk. Allegedly, Dr. Funk examined plaintiff's arm and filled out an order that was "designated as Urgent for [a] referral to an orthopedic doctor." *Id.* ¶ 32. At this time, Dr. Funk also ordered plaintiff to be relieved of his duties in the pots and pans area of the kitchen.

On September 27, 2011, plaintiff was seen by an orthopedic doctor at Katherine Shaw Bethea Hospital. *Id.* ¶ 35. The orthopedic doctor informed plaintiff that he needed to see a bone specialist and would probably need corrective surgery. *Id.* ¶ 35.

Plaintiff contends a number of weeks passed without treatment. He alleges that he continued to complain to the medical staff at Dixon about his arm, but no action was taken. Plaintiff claims it was not until November 21, 2011, when he went to the University of Illinois Medical Center, that he saw another doctor. Plaintiff states this doctor again recommended that he see an orthopedic hand specialist. *See id.* ¶ 38. On this visit, x-rays were taken and "clearly showed that [plaintiff's] arm was broken and the bones were mending one atop the other." *Id.*

Allegedly, weeks passed again without any treatment. Because of this, plaintiff sent a letter to Wexford on December 13, 2011. In the letter, plaintiff explained his injury and informed Wexford that his physicians had requested that he see an outside specialist, but these requests had been denied. *Id.* ¶ 40.

Approximately one month later, Wexford sent plaintiff a letter in response. The letter stated that plaintiff would "be scheduled to see a specialist in the near future." *Id.* ¶ 41.

Plaintiff claims he did not see a doctor in the "near future." Allegedly, he was not taken to see an orthopedic doctor until March 2012. *Id.* ¶¶ 42; 47. At this time, the orthopedic surgeon informed plaintiff that he needed to have "an iliac crest bone graft and a plate inserted in his right forearm." *Id.* ¶ 47. This surgery was not performed until May 10, 2012. *Id.* ¶ 49.

After the surgery, plaintiff's arm was put in a cast. Plaintiff alleges that the cast remained on his arm for over six months and claims after the surgery he had a number of physical therapy sessions, but this "achieved nothing[,]" as he continued to have pain and restricted motion in his arm. *Id.* ¶ 55.

Plaintiff states he most recently saw the orthopedic surgeon on September 19, 2013. At this visit, plaintiff informed the doctor that he was still in pain, and the doctor ordered a variety of tests. Plaintiff claims he continues to experience pain in his arm and claims he cannot hold anything heavy with his right hand. *Id.* ¶ 58.

3

## A. Defendants Nedra Chandler and Debra Habben's Motion to Dismiss [30]

Defendants Chandler and Habben argue plaintiff's allegations against them do not form a cognizable deliberate indifference claim. They contend that as non-medical professionals they are insulated from liability because plaintiff admits he was being treated by medical professionals. They argue that because plaintiff was being treated they could not have the requisite state of mind to be liable for deliberate indifference. *See* [30] at 4.

Plaintiff disagrees. He points to the allegations regarding defendants' failure to provide timely medical care for ten months. With respect to Habben, plaintiff argues that he has alleged the requisite personal involvement and state of mind because the complaint states that Habben saw his arm the day after the incident occurred and denied his request for medical treatment. He also references his allegations regarding Habben's failure to complete an incident report to document that the incident ever occurred as support for her personal involvement. With respect to Chandler, plaintiff argues that he has alleged personal involvement because the amended complaint states that Chandler was the individual responsible for denying his emergency grievances. Plaintiff also argues that both defendants have the requisite state of mind because he has alleged that "[i]t was obvious to even a layperson that [plaintiff] required immediate medical attention . . .[.] " [48] at 13 (citing [13] ¶ 78).

Even though Chandler and Habben are correct that a non-medical prison official cannot be liable for deliberate indifference "simply because [they] failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor" (*Johnson v. Doughty*, 433 F.3d 1001, 1012 (7th Cir. 2006)), the fact that a prisoner is receiving treatment does not in it of itself insulate non-medical prison officials from liability. *See generally Arnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011). "Deliberate indifference can include the intentional delay in access to medical care . . . [and] a delay in treating non-life-threatening but painful conditions . . . if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Id.* at 753 (citing *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)).

Plaintiff has alleged that both Habben and Chandler had knowledge of his injury and were personally involved in his delay in receiving medical care. *See* [13] ¶¶ 79-81. At the dismissal stage, these allegations are sufficient. *See Arnett*, 658 F.3d at 754 ("[N]on-medical defendants cannot simply ignore an inmate's plight."). While the evidence may later reveal that neither Habben nor Chandler were personally responsible for plaintiff's delayed medical care, at this stage in the litigation the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *See generally Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). As such, the court denies the motion to dismiss Chandler and Habben.

The court also notes that these defendants' reliance on *Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006) is misplaced. There, the Seventh Circuit affirmed a district court's award of summary judgment to non-medical prison official defendants on a deliberate indifference claim because the evidence revealed that the non-medical prison officials took the prisoner's "complaint seriously, investigated the matter, and reasonably relied on the judgment of medical professionals." *Johnson*, 433 F.3d at 1012. In this case, plaintiff has alleged that both Habben

and Chandler were aware of his serious medical condition and his requests for immediate medical attention, but failed to take action. *See* [13] ¶¶ 79-80. He has alleged their failure to take his complaints seriously caused his condition to worsen and caused him unnecessary pain. *See id.* ¶ 81. At the dismissal stage, these allegations are sufficient. *See Santiago v. Walls*, 599 F.3d 749, 758-59 (7th Cir. 2010); *see also Franklin v. Hardy*, No. 12-C-2970, 2013 WL 3147365 at *3 (N.D. Ill. June 19, 2013) (refusing to dismiss prison official defendants from a prisoner's deliberate indifference claim because the prisoner alleged that the prison official defendants were in a position to help the prisoner obtain medical treatment, but refused to do so). Accordingly, defendant Chandler and Habben's motion to dismiss [30] is denied.

**B. Defendant Wexford's Motion to Dismiss [20]**

Count II of the amended complaint sets forth a deliberate indifference claim against defendant Wexford. Specifically, plaintiff alleges that "Wexford had policies or practices in place that were the underlying reason for the delays in [plaintiff] receiving proper medical treatment for his medical condition." [13] ¶ 72. Plaintiff points to Wexford's policy in denying requests for referrals to outside specialists and its policy of failing to maintain an adequate medical staff as the reasons for his failure to receive prompt medical care. *See id.* Wexford argues these allegations are conclusory and insufficient to state a *Monell* claim.

It is well established that "[p]rivate corporations acting under [the] color of state law may, like municipalities, be held liable for injuries resulting from their policies and practices." *Rice ex rel. Rice v. Correctional Medical Services, et. al.*, 675 F.3d 650, 675 (7th Cir. 2012). To state a claim against a municipal or corporate defendant under Section 1983, a plaintiff must allege that his injury "was the result of the municipality's or corporation's official policy or custom." *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985); *Monell*, 436 U.S. at 690-91.); *see also Teesdale v. City of Chicago*, 690 F.3d 829, 833-34 (7th Cir. 2012) (stating that municipal liability requires a plaintiff to show a policy ". . . not only causes but is the "moving force" behind the deprivation of constitutional rights."). Municipal or corporate liability can be established in one of three ways. A plaintiff can allege "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) . . . [a] constitutional injury was caused by a person with final policymaking authority." *Id.* at 834.

In its motion to dismiss, Wexford argues that plaintiff has failed to allege a custom or practice of deliberate indifference to medical needs. However, as the court already noted, plaintiff has alleged that Wexford has a policy of denying or delaying requests for referrals to outside specialists. [13] ¶ 72. He has also alleged that Wexford has a policy of maintaining inadequate medical staff levels. *Id.* The amended complaint states these policies "were the underlying reason for the delays in [] receiving proper medical treatment for [plaintiff's] medical condition." *Id.* Viewing these allegations in a light most favorable to plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences from the allegations in plaintiff's favor, the court finds the allegations support a permissible inference that Wexford has a widespread practice of treating inmates medical needs with deliberate indifference. *See generally Wheeler v.*

5

*Wexford Health Sources, Inc.*, 689 F.3d 680, 681-83 (7th Cir. 2012); *see also Ford v. Wexford Health Sources, Inc., et al.*, No. 12-C-4558, 2013 WL 474494 at *9 (N.D. Ill. Feb. 7, 2013) (St. Eve, J.) (denying defendant Wexford's motion to dismiss a plaintiff's Section 1983 claim because the plaintiff alleged facts of a practice of delayed delivery of medical permits and delayed scheduling of medical appointments). As such, the court denies defendant Wexford Health Sources, Inc.'s motion to dismiss [20].

    For the reasons stated above, defendants Nedra Chandler and Darla Habben's motion to dismiss [30] is denied and defendant Wexford Health Sources, Inc.'s motion to dismiss [20] is denied.


Date: 4/4/2014                              ENTER:


                                                                    */s/ Philip G. Reinhard*
                                                    United States District Court Judge


                                                          Electronic Notices. (LC)